IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

McVICK, LLC and JDV CORPORATION,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　 )　　Case No. 6:12-cv-01644-HO
　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　)　　ORDER
　　　　　　　　　　　　　　　　　　)
UNITED STATES DEPARTMENT of　　　  )
HOUSING and URBAN DEVELOPMENT,　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

## INTRODUCTION

McVick LLC and JDV Corporation, (plaintiffs) seek to enjoin defendant, United States Department of Housing and Urban Development (HUD), from enforcing it's investigative subpoena commanding plaintiffs to allow inspection of the public use and common areas of plaintiff's 12-unit apartment complex located at 12th and Market Street in Salem, Oregon (subject property), as well as the interiors of four ground units in the subject property. [#1]. Plaintiffs'

ORDER - page 1

motion is brought subsequent to the Director of HUD's Fair Housing and Equal Opportunity Office (FHEO), denying plaintiffs' motion to quash HUD's investigative subpoena[1] on September 10, 2012.  [#8-2].

Plaintiff contends that HUD's inspection should be "banned" because: (1) the complainant, Fair Housing Council of Oregon (FHCO), lacks standing because it is not an "aggrieved person" under the Fair Housing Act (FHA); (2) HUD's prosecution based on the FHCO complaint is barred by the statute of limitations; (3) because of HUD's delay, plaintiff will suffer irreparable harm if the inspection is allowed and (4) it is in the public interest to prevent untimely public enforcement of private complaints against owners of public housing.  [#1-1; #12].

## Background

On September 21, 2009, FHCO filed a complaint with HUD alleging that plaintiffs[2] discriminated on the basis of disability by designing and/or constructing the subject property in a manner that did not comply with the FHA's accessibility requirements in violation of 42 U.S.C. §3604(f)(3)(C).  [#1-1,p.2; #8-2,p.2].  The complaint alleged that the site violated accessibility standards

---

[1]   Plaintiffs sought to quash the subpoena in its entirety or alternatively to modify it to command inspection of the exterior of the structure only.  [#8-2,p.1]

[2]   FHCO original complaint filed on September 21, 2009, against Boulder Ridge Development Inc., was amended on March 5, 2010 to name McVick LLC the owner of the property, JDV Corp., and Scott McKinney as additional respondents.  *Id.*

because: the route from the parking lot to the sidewalk had a greater than a 5% slope and lacked handrails; the wheelchair ramps exceeded 8.33%, were greater that 1500 inches long and did not have space for a wheelchair turnaround; and the units' door knobs were not appropriately accessible mechanisms. [#8-p.3, ¶5].

Plaintiffs initially attempted to cooperate with HUD regarding the exterior issues however, consistently refused to allow HUD to inspect the interior of the units. [#1-p.2; #8-p.4; #12-p.3]. From January through July of 2010, HUD repeatedly attempted (without success), to obtain the plans for the units as well as plaintiffs' consent to allow HUD's inspection of the interior of the units. [#8-p.6].

On July 16, 2010, FCHO filed a second amended complaint adding the design and engineering firms to the list of defendants as well as allegations that "because of the observations of [exterior] noncompliance . . . FCHO believes that noncompliant features may exist in the interior of the dwelling units." [#8-p.6; #8-1]. On September 9, 2010, plaintiffs responded to the complaint, arguing that FCHO lacked standing to bring the complaint and requested dismissal of the complaint by HUD. [#8-p.6].

On November 12, 2010, HUD received a copy of the project plans which raised its general concerns about the accessibility of the ground floor units. [#8-pp.6-7]. A pre-subpoena letter was sent to Mr. Vick on December 9, 2010 responding to his questions about

ORDER - page 3

FHCO's standing, advising him that HUD did have the authority to conduct an on-site inspection and seeking his voluntary compliance with its request to inspect the interiors of the four ground floor units. [#8-p.7; #12-p.3].

Between September 2010 and July 2011, the Office of Fair Housing and Equal Opportunity (FHEO) attempted to secure funds to hire inspectors for various Oregon sites including the subject property. [#8-p.8]. On June 29, 2012, LaVerne Myles-Bryant from FHEO called Mr. Vick to advise him that HUD was prepared to go forward with its inspection of his property. [#8-p.8]. Mr. Vick reiterated his opposition to any interior inspection. *Id.*

On August 9, 2012, HUD notified plaintiffs of its intent to issue an inspection subpoena. [#8-p.9; #8-2]. HUD served plaintiffs with its investigative inspection subpoena on August 16, 2012. [#8-p.9; #8-2]. Plaintiffs filed a motion to quash the subpoena or modify it to command access to only the exterior of the structure with FHEO, on August 13, 2012. [#8-2-p.1]. On September 10, 2012, in a 10-page opinion, FHEO denied plaintiff's motion to quash. [#8-2].

## Discussion

The FHA as amended in 1988, prohibits discriminatory housing practices based on disability or familial status. 42 U.S.C. §3604(f)(1)and (2). The FHA seeks to prevent such discrimination by establishing design and construction requirements for covered

ORDER - page 4

multifamily housing built after March 1991. 42 U.S.C. §3604(f)(3)(C). The parties do not dispute that the FHA as codified in 42 U.S.C. §3601 *et seq*, applies to the subject property however, plaintiffs assert that HUD has exceeded its authority in seeking to access the interior of the units. [#4-p.6].

The Supreme Court in setting the standard for judicial enforcement of administrative subpoenas held that an agency's investigation is lawful if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). The scope of the court's inquiry into an agency subpoena is narrow. *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir.1996).

Generally, the court must ask "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir.1983). An affidavit from a government official is sufficient to establish a *prima facie* showing that these requirements have been met. *United States v. Stuart*, 489 U.S. 353, 360 (1989). If the agency establishes these factors, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome. *Children's Hosp.*, 719 F.2d at 1428.

ORDER - page 5

Based on Ms. Myles-Brandt's declaration and HUD's statutory obligation to investigate complaints of housing discrimination filed with it, I find that HUD's demand for access to the interior of the subject property for the purpose of inspection was made pursuant to its statutory authority and sought for the legitimate purpose of ascertaining the validity of the complaint alleging that the property was constructed in violation of accessibility requirements.

Because HUD has established a *prima facie* case for its investigative subpoena, the burden of proof shifts to the plaintiff to establish a defense to enforcement.

1.  Standing:

Plaintiffs argue that FCHO lacks standing to bring a complaint because it is not an aggrieved person injured by a discriminatory housing practice. [#4-p.6]. Plaintiffs further contend that while case law may allow FCHO to sue HUD directly it does not give them authority to file an initial complaint with HUD. [#12-pp.4-5].

FCHO is a nonprofit housing rights advocacy corporation whose mission is to assure equal access to housing for all persons in Oregon and southwest Washington. [#7-pp.7-8; #8-2,p.6]. FHCO complained that the subject property, as designed and constructed, was inaccessible to people with disabilities. [#8-1].

Section 3602(d) of the FHA defines person to include corporations and associations. 42 U.S.C. § 3602(d). As a threshold matter, FCHO, a non-profit corporation, is therefore a person as

defined by the statute. *Walker v. City of Lakewood*, 272 F.3d 1114, 1123, n.1(9th Cir.2001). However, FCHO must satisfy the requirement for individual standing, namely, a concrete and particularized injury giving FCHO "a personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

The Ninth Circuit has established that an organization may satisfy the Article III requirement of injury in fact if, it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Smith v. Pacific Properties and Development Corp.*, 358 F3d 1097, 1105 (Ninth Cir. 2004).

On the face of its complaint, FCHO alleged that it is a non-profit corporation organized "to assure equal access to housing for all persons in Oregon and SW Washington." [#8-1,p.3]. FCHO alleges four possible violations of the FHA that it observed in looking at the exterior of the subject property. *Id.* Based on those exterior observations the FCHO alleges that noncompliant features may exist on the interior of the units. *Id.*

A violation of the FHA would frustrate FCHO's mission and the alleged violations have caused FCHO to divert organizational resources to investigate and file the instant complaint. *Smith,* 358 F3d at 1105(citing *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (Ninth Cir.2002)). Applying these standards to the allegations in this matter, I find FCHO has standing to file this complaint.

ORDER - page 7

2.    Temporary Restraining Order/Preliminary Injunction:.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 31 (2008). To obtain a preliminary injunction, plaintiffs "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir 2009)(citing *Winter*, 555 U.S. at 24-25)).

Plaintiffs argue that they are likely to prevail on the merits because (1) FCHO's complaint was untimely filed as it was, before the units were completed and (2) HUD has unreasonably delayed its prosecution of the complaint. [#12-p.6]. This argument was considered and rejected by the detailed agency opinion. [#8-2]. The agency director found that the last certificate of occupancy was issued on October 13, 2009, the last date upon which a complaint alleging section 3604(f)(3)(C) violations could be filed was therefore October 13, 2010. [#8-2,pp.8-9]. FCHO filed their complaint on September 21, 2009. *Id.* It was thus, timely filed. *Id.*

Plaintiffs also contend that they are likely to prevail on the merits because HUD did not, as required under 42 U.S.C. §3601(a)(1)(B)(iv)[3], investigate an allegedly discriminatory housing practice within 100 days of the complaint's filing and did not as required by 42 U.S.C. §3601(a)(1)(C)[4], notify plaintiffs of reasons for not timely completing its investigations.  However, because the 100-day period is neither mandatory nor jurisdictional, there is no authority for this court imposing a 100 day statute of limitations. For this reason, I conclude that plaintiffs are unlikely to prevail on this issue.

Plaintiffs further contend that they are likely to prevail on the scope of the subpoena because, there are no substantive claims indicating that there are FHA violations within the building and there is no reasonable cause to believe that the units are not in compliance with the FHA, given that the City of Salem inspectors

---

[3]     42 U.S.C. §3601(a)(1)(B) states that upon the filing of a complaint . . .(iv) the Secretary shall make an investigation of the alleged discriminatory housing practice and complete such investigation within 100 days after the filing of the complaint (or, when the Secretary takes further action under subsection (f)(2) of this section with respect to a complaint, within 100 days after the commencement of such further action), unless it is impracticable to do so.

[4]     42 U.S.C. §3601(a)(1)(C): If the Secretary is unable to complete the investigation within 100 days after the filing of the complaint (or, when the Secretary takes further action under subsection (f)(2) of this section with respect to a complaint, within 100 days after the commencement of such further action), the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so.

ORDER - page 9

have issued a certificate of occupancy. [#12-pp.7-8]. Plaintiffs additionally assert they will suffer irreparable harm should HUD's subpoena be upheld because they are prejudiced by the delay in enforcement. [#12-pp.8-9]. Plaintiffs argue that this delay would prevent them from seeking legal recourse against design and engineers responsible for any violations that might be found, thereby forcing the current owner to face the entire financial burden that FHA compliance might impose.

The record shows that plaintiffs had notice of HUD's concerns and desire to inspect since 2009, and have engaged in a protracted dialogue with the agency as it attempted to gain plaintiffs' permission to inspect the subject property. I therefore find that any loss of claims that plaintiffs may have suffered cannot be attributed to the agency.

Similarly, I find that plaintiffs fail to raise any colorable indications of irreparable harm likely to be incurred as a result of allowing inside inspections of the four ground floor units. Nor do I agree that the public interests tip in plaintiffs' favor, especially given the harm the public and the disabled community in particular, suffer should the alleged FHA violations be allowed to remain uncorrected.

## Conclusion

For the reasons detailed above, plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction[#1] is DENIED.

IT IS SO ORDERED

DATED this __8th__ day of November, 2012.

_____
UNITED STATES DISTRICT JUDGE